WHITTEMORE *v.* JUDD LINSEED & SPERM OIL Co. *et al.*

*(Common Pleas of New York City and County, General Term.* June 2, 1890.)

1. INJUNCTION—WANT OF EQUITY—ASSIGNMENT OF JUDGMENT.

In a suit against plaintiff and another, on a partnership liability, a several judgment was entered against each. The creditor assigned for a valuable consideration its judgment against plaintiff's partner, reserving its rights against plaintiff. The assignee, without consideration, executed a release to plaintiff, who seeks to enjoin the collection of the judgment against him, claiming that the release was valid because the original judgment would be considered in equity as a joint judgment, and the assignment of a part carried the whole. *Held,* that plaintiff cannot be heard to complain that defendants seek to take advantage of the fact that it is too late to·have the mistake in entering the original judgments corrected.

2. AMENDMENT—INCONSISTENT CAUSE OF ACTION.

Plaintiff towards the end of the trial sought to amend his petition so as to charge the assignee, on the ground of deceit, with indemnifying him in case he were compelled to pay the original judgment. *Held,* the application was properly denied as introducing an inconsistent cause of action, and therefore forbidden by Code Civil Proc. § 484.

3. SAME—LEGAL CAUSE OF ACTION.

The amendment was properly denied also, because, being based upon fraud, it was a legal and not an equitable claim, and one in which the defendant would be entitled to a jury.

Appeal from special term.

Suit by William L. Whittemore, as administrator of Henry Hubbell, deceased, against the Judd Linseed & Sperm Oil Company and George Deforest Lord, to enjoin the collection of a judgment against the estate of deceased. The complaint was dismissed, and plaintiff appealed.

*Bristow, Peet & Opdyke,* (*William C. De Witt* and *Edw. A. Smith,* of counsel,) for appellant. *Evarts, Choate & Beaman* and *Lord, Day & Lord,* for respondent.

BOOKSTAVER, J. In 1868 the defendant the oil company commenced an action against Henry W. Hubbell and Robert L. Taylor to recover a certain sum alleged to be due from them as copartners. Hubbell made default, and Taylor put in an answer denying his copartnership with Hubbell and his liability as such copartner. The issues thus raised were tried before the late Judge Emott, as referee, who reported in favor of the oil company against Hubbell for $40,950.29, and against Taylor for $43,420.70. Upon this report the company, on the 27th of April, 1872, entered judgments against Hubbell & Taylor separately for the respective amounts above mentioned at the same time, and by means of the same record or judgment roll, although there can be no doubt that the cause of action alleged in the complaint, and found by the referee, was a joint liability on the part of both defendants as copartners. This action in equity was brought by Hubbell in his life-time to have that judgment declared satisfied and discharged, and to enjoin the defendants from enforcing or collecting the same from him or his estate. During the pendency of the action Hubbell died, and it was revived in the name of the present plaintiff, his administrator, etc. In October, 1867, Hubbell & Taylor executed assignments of their separate property and also an assignment of their joint property to John R. Gardner, Alexander P. Irvin, and Charles A. Sherman, and in February, 1868, the defendant herein, the oil company, and the assignees entered into an agreement by which the latter guarantied to the former that, in case it established the liability of Taylor to pay its demands in the first-mentioned action, it should receive 50 per cent. of such demands as a separate composition on the part of Taylor, and in full satisfaction of all their claims and demands against him or his estate; and thereupon the company agreed, pursuant to the statute provided in such case, to release and discharge Taylor and his individual estate from all further claims, reserving for itself, however, anything that might remain due on its claims

against Hubbell and his individual estate, and against the joint estate of Hubbell & Taylor. After the entry of the judgments above mentioned, and on or about the 15th of August, 1872, the oil company assigned to the defendant Lord, in consideration of $16,750, all its claims and demands against Taylor individually, and against his individual estate, and all its right, title, and interest in the judgment before mentioned as entered against Taylor for the sum of $43,420.70, and all its right, title, and interest in and to the moneys due, and to grow due, under the same from Taylor or his individual estate. The assignment then contained this clause, viz.: "And it is expressly understood that the said Judd Linseed and Sperm Oil Company are to retain, and do hereby expressly reserve, all their claims and rights of every nature against the joint property and estate of Robert L. Taylor and Henry W. Hubbell, and against the individual property and estate of Henry W. Hubbell; it being intended hereby to transfer only such and any such claims as they may have against the said Robert L. Taylor individually, and his individual estate, in whatever way the same may be made available for the payment thereof." On the 30th of September, 1873, the oil company released the assignees of Hubbell & Taylor from all claims and demands which it might have against them, which release expressly reserved the oil company's rights against Hubbell individually, or against any estate of his not then in the hands of the assignees. On the 8th of August, 1874, the defendant Lord executed, as owner and holder of the claims of the oil company against Taylor and Hubbell, a release thereof to Hubbell. In October, 1874, the oil company assigned to Lord all their claims and rights of every nature against the joint property of Taylor and Hubbell in the hands of their assignees under the before-mentioned judgment for $43,420.70, giving Lord full power to ask and demand the same from the assignees of said joint estate, or from any person or persons whomsoever, excepting as against Hubbell and any individual or joint estate thereafter realized by him. In April, 1876, the oil company issued an execution against the property of Hubbell upon the before-mentioned judgment for $40,950.29, claiming that the sum of $25,060.20 was still due thereon. Thereupon the plaintiff's intestate commenced this action to prevent its collection.

The case was first tried in the equity term for November, 1876, before Chief Justice VAN BRUNT, then one of the judges of this court. He dismissed the complaint on the ground that the oil company never parted with its title to the judgment against Hubbell by reason of the assignments before stated, and that the defendant Lord did not have power to release Hubbell. The evidence upon that trial was substantially confined to the documents before referred to, and the learned chief justice substantially held that, inasmuch as the judgment was entered against Taylor and Hubbell severally, and not jointly, and as that judgment had never been modified, it was conclusive, and it was not worth while to discuss what would have been the effect of the papers which had been executed had the judgments been entered as a joint judgment; nor was it necessary to consider whether it ought to have been so entered, because, as he said, "in construing the various instruments which were executed, it is necessary to be governed by the actual condition of the record, and not by what I might think it should have been. * * * The judgments being several, I can see no reason why the oil company was not at liberty to assign the judgment against Taylor, reserving all their rights against Hubbell. This, it seems to me, is all the oil company did by the assignment of August, 1872. * * * By this assignment the defendant Lord could collect nothing whatever from Hubbell or from the joint estate of Hubbell & Taylor, but was restricted to the individual estate of Taylor." From the judgment entered on this decision the plaintiff appealed to the general term. Pending this appeal, and in January, 1877, Hubbell moved at the special term of this court, in the action of the oil company against him

and Taylor, to vacate the judgment entered against him, on the ground that judgments had been entered against him and Taylor as several judgments, whereas it should have been joint against both, or to amend it so as to make it a joint judgment.  On this motion Hubbell introduced as a part of the proceedings the entire record in this action, down to and including the decision of Chief Justice VAN BRUNT.  See bound volume Cases in Court of Appeals, Law Institute.  The motion was denied, and Hubbell appealed from the order denying it.  He also appealed from the original judgment.  All these appeals were heard by the general term of this court in March, 1878, composed of Chief Judge CHARLES P. DALY and Judges VAN HOESEN and J. F. DALY.  On the appeal from the judgment entered on the decision of Judge VAN BRUNT, separate opinions were written by each of these judges.  Judge J. F. DALY was for reversal, on the ground that Hubbell and Taylor were in the original action sued as joint debtors, and a single judgment demanded against them.  The complaint charged them as copartners.  Hubbell admitted this by failing to answer, and on the issues raised by Taylor the referee had found he was jointly and severally indebted with Hubbell, and therefore a joint judgment should have been entered against both defendants and not separate judgments against each; that, notwithstanding the judgment had been so entered, it should in equity be regarded as a joint judgment against both, and therefore the assignment of the oil company to Lord of their claim under the judgment as against Lord was ef- fectual to transfer the whole claim to Lord, and that consequently the release to Taylor was operative to discharge Hubbell from the whole.  Chief Judge, DALY and Judge VAN HOESEN in their opinions agreed with Judge VAN. BRUNT that the judgment as entered was several and not joint, and they agreed that a new trial must be granted for the reason stated by Judge VAN HOESEN, that evidence had been improperly excluded.  Judge VAN HOESEN concurred with Judge VAN BRUNT to the effect that the judgment could not be impeached collaterally in this action as a separate judgment, whether it ought to have been joint or not, and thus expresses himself on the question. of a new trial: "Having carefully read all the testimony, I am very much dissatisfied with the result of the trial.  It is very evident that the merits of the case have not been made to appear.  *  *  *  It appears to be more than. probable that some understanding existed between the Judd Oil Company and Mr. Geo. de Forest Lord, which led Lord to believe that he had a right to give Hubbell a full and clear discharge.  Mr. Lord is a man of character, and a lawyer of ability and experience.  In August, 1874, he gave Hubbell a release from the judgment.  From what did he derive power to execute such a release?  The oil company would have the court believe from an assignment made in October, 1874.  Is it to be supposed that Lord acted without authority in August, 1874?  Did he execute the release in August without the right to do so?  And did he, in the following October, procure an assignment from the oil company to cover and conceal his want of authority in August? Again, if the assignment dated October 6, 1874, were Lord's only authority for releasing Hubbell, how was it possible for him to believe that he was empowered to grant such a release, when the assignment in unmistakable words declares that the company reserves all its rights of every nature against Hubbell?  These are matters which the trial did not clear up, and which the witnesses did not explain.  Had a more liberal line of examination been fixed, it seems probable to me that evidence might have been elicited showing that Mr. Lord acted throughout in the best of faith towards all parties, and that the company, either by an oral assignment, or by some written instrument which has been lost or destroyed, gave to Lord, prior to August, 1874, ample, authority to execute a release to Hubbell."

The appeal of Hubbell from the judgment in the original action was dis- missed upon the ground that the judgment was regularly entered against

Hubbell upon his failure to answer, and that, so far as he was concerned, no appeal would lie, and that the remedy of a party in case of judgment entered against him by default was by motion to vacate or correct it. On the appeal from the order denying the motion to vacate or amend the original judgment, three separate opinions were also written, (19 Alb. Law J. 97;) Chief Judge DALY and Judge VAN HOESEN concurring in reversing the order, and in directing an order to be made correcting the judgment by making it a joint judgment against both; Judge VAN HOESEN holding that there was not merely the irregularity of entering a separate judgment against each defendant, but that there was the unauthorized act of entering judgment against one of the defendants for a larger sum than the plaintiff was entitled to recover; and the chief judge holding that the judgment was wrongly entered as a separate judgment, when it should have been entered as a joint judgment, for the amount found by the referee to be due, and in the course of his opinion, answering the point that inasmuch as Hubbell had filed his bill to restrain the prosecution by the oil company of proceedings against him, and must abide by the result of that action, said: "It appeared in the equitable action that the judgment ought to have been entered up as a judgment against both defendants jointly for the same amount; but the plaintiff failed because it appeared by the record that the separate judgments were entered up against each of the defendants for different amounts,"—and agreed with Judge VAN HOESEN that the entry of the judgment was unauthorized, and not irregular merely. Judge J. F. DALY in effect held that the judgment as entered was a joint judgment, and not several, and there was therefore no occasion to amend or correct it. He was therefore for the affirmance of the order appealed from. From this order made by the general term an appeal was taken by Hubbell to the court of appeals. In that court the order of the general term was reversed, and the order of the special term affirmed, (76 N. Y. 545;) all of the judges concurring except the chief judge, who was for a dismissal of the appeal. As before stated, the record of this action down to the trial and decision of Judge VAN BRUNT was before that court. The counsel for Hubbell took the express ground that the error in the judgment was not a mere irregularity, but a substantial error. The court in its opinion says: "As the judgment was rendered on the 27th of April, 1872, and the order did, in effect, set it aside, and was made on motion, notice of which was not served until January, 1877, it is apparent that it is necessary to determine whether the cause upon which the court acted was or was not an irregularity, and nothing more." The court then recited the proceedings in the cause up to judgment, and proceeds: "The plaintiffs at the same time, and by means of the same record or judgment roll, took judgments against the defendants separately, as stated in the order to show cause. This was clearly irregular, but we think it was nothing more. The plaintiffs did not adhere 'to the prescribed rule or mode of proceeding,' by which they were entitled to a joint judgment, and which a due and orderly conduct of the suit required them to take. But this defect was merely technical, and does not affect any substantial right of the adverse party. It does not in any way increase the liability of the defendant, for upon each partner rests an absolute liability for the whole amount of every debt due from the partnership; * * * and, although originally a joint contract, it may be separate as to its effects. Though all are sued jointly, and a joint judgment obtained, and a joint execution taken out, yet it may be enforced against one only. Each partner is answerable for the whole, and not merely for his proportionable part; and, as the judgments were taken against each partner for a partnership debt, the partnership property is bound to the same extent as if there had been but one judgment for the whole against both partners. * * * Nor does the form of the judgment in any way affect the debtor's relations with his copartner, for, if he pays the debt or judgment, he will be entitled to contribution or to

a credit for the sum paid in any accounting respecting the partnership affairs." Thereafter the case was retried by Chief Judge LARREMORE, and, as he says in his opinion, "a vast mass of evidence has been taken, much of it, as appeared to me when admitted, clearly immaterial, but it seemed better to allow plaintiff every opportunity to establish the parol assignment which the learned judges had suspected had been given. The result is that I shall make the same findings as on the former trial, there being no sufficient evidence to show that any assignment, either by parol or in writing, of the individual judgment against Hubbell, was ever made to the defendant Lord."

Upon this appeal it is unnecessary to determine whether or not a parol assignment of the judgment in question would be good and operative, as the learned justice who tried the case has found, and as we think on the evidence he was fully justified in finding, that no assignment either oral or written was proved. We agree with the learned chief justice that much, if not most, of the oral evidence admitted upon the trial was immaterial for the purposes of establishing an assignment, and at most it only went to prove that Mr. Lord was the attorney or agent of the oil company, and much of it was incompetent even for that purpose, as agency cannot be proved by the declaration of the agent, and the evidence referred to was merely evidence of what plaintiff's witnesses recollected of Mr. Lord's declarations. In order to make the release executed by Lord to Hubbell effective, it must have been founded upon some assignment, either oral or in writing. The release was under seal, and was required to be under seal in order to be binding, as the law only recognizes that method of wiping out a debt without payment. But it is clear that this evidence did not in any way injure the plaintiff, and no further consideration of it is necessary.

Inasmuch as four of the judges of this court and at least six of the judges of the court of appeals have held that the judgments in question were several and not joint, and as four of the judges of this court have held, either sitting together, or in individual opinions, that the record is conclusive against the parties in this case, and we feel bound to follow their opinions, it would be out of place for us to further discuss the question whether the judgment is or should have been joint and not several.

The plaintiff complains that a technical advantage is being taken in this action because the judgments were incorrectly entered as several judgments, and because it is now too late to correct such error. But the plaintiff is himself endeavoring in a court of equity to take advantage of a technical rule of law, by which he seeks to avoid the effect of a judgment without paying the just debts of Hubbell's estate. A court of equity is for the purpose of a shield, and not to put a sword in the hand of a suitor for such purpose. Had the judgment been originally entered as a joint judgment against Hubbell and Taylor, the release to the latter might have been executed, under the statute, without releasing Hubbell, or other means might have been found to effectuate what they really intended, and still to have held Hubbell's estate. Towards the end of the trial plaintiff's counsel moved for an amendment of the complaint, so that Mr. Lord might be personally charged with indemnifying the plaintiff if the injunction were dissolved, and plaintiff was obliged to pay the judgment held by the oil company. The court reserved its decision, which was not made until the whole case was decided. Testimony, however, was taken at some length bearing upon this question, and we think the court properly refused such amendment: *First.* Because the amendment sought to introduce an element in this action entirely inconsistent with the groundwork of the action, which is that the judgment was in fact discharged, and any claim such as made by the plaintiff against Mr. Lord must go on the theory that the judgment was not discharged. Causes of action against several defendants can only be joined when they are all of the same nature, and "are consistent with each other," and, "except as otherwise provided by law,

* * * affect all the parties to the action." Code, § 484. *Society* v. *Scher-merhorn*, 60 How. Pr. 477. The exceptions alluded to relate to mortgage foreclosures and other cases where the mode of procedure is specially provided. Code, § 1627; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392. *Second.* The claim thus sought to be introduced was one for damages for alleged fraud or misrepresentation, or for deceit, and therefore was a legal and not an equitable claim, and one in which the defendant Lord was entitled to a trial by jury. We have carefully read over the testimony on this subject, and agree with the learned chief justice in the conclusion to which he in his opinion apparently arrived, that the evidence was not sufficient to establish any cause of action against Mr. Lord on these grounds, and that his course throughout the transactions had been upright and honorable.

. For these reasons, as well as for the reasons stated by the learned chief justice in his opinion, which we have not herein alluded to, we think the judgment should be affirmed, with costs to both respondents.